IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Kobe, Mark, and John, | ) | C/A No. 3:11–1146-TMC |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nikki Haley, in her capacity as | ) | |
| Governor and Chairman of the | ) | |
| South Carolina Budget and Control | ) | |
| Board;  Daniel Cooper, Converse | ) | |
| Chellis and Mark Sanford, in their | ) | |
| capacities as former members of | ) | |
| the South Carolina Budget and | ) | |
| Control Board; Hugh Leatherman | ) | |
| and Richard Eckstrom, in their | ) | |
| capacities as members of the South | ) | |
| Carolina Budget and Control Board; | ) | |
| Curtis Loftis and Brian White, as | ) | |
| members of the South Carolina | ) | |
| Budget and Control Board, Anthony | ) | |
| Keck, in his capacity as the Director | ) | |
| of the South Carolina Department | ) | |
| of Health and Human Services, | ) | |
| Emma Forkner, in her capacity as | ) | |
| the former Director of the South | ) | |
| Carolina Department of Health | ) | |
| and Human Services, Beverly | ) | |
| Buscemi in her capacity as Director | ) | |
| of the South Carolina Department | ) | |
| of Disabilities and Special Needs, | ) | |
| Eugene A. Laurent, former Interim | ) | |
| Director of the South Carolina | ) | |
| Department of Disabilities and | ) | |
| Special Needs; Stanley Butkus, | ) | |
| former Director of the South Carolina | ) | |
| Department of Disabilities and | ) | |
| Special Needs; Richard Huntress, | ) | |
| in his capacity as Commissioner | ) | |
| of the South Carolina Department | ) | |
| of Disabilities and Special Needs; | ) | |
| Kathi Lacy, Thomas P. Waring and | ) | |
| Jacob Chorey, in their capacities | ) | |
| as employees of the South Carolina | ) | |
| Department of Disabilities and | ) | |
| Special Needs, Mary Leitner, in | ) | |
| her capacity as the Director of the | ) | |

Richland Lexington Disabilities and )
Special Needs Board; the Babcock )
Center, Judy Johnson, in her capacity )
as the Director of the Babcock Center )
and other Unnamed Actors Associated )
with the Babcock )
Center, )
                    )
              Defendants. )
_____

In their Amended Complaint, Plaintiffs seek actual and punitive damages, and declaratory and injunctive relief for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); the Medicaid Act;[1] and 42 U.S.C. §§ 1983 and 1985. (Dkt. # 65 - Am. Compl. at 3).[2] This matter is before the court on four separate motions to dismiss filed by Defendants Nikki Haley (Dkt. # 73), Curtis Loftis and Brian White (Dkt. # 99), Daniel Cooper (Dkt. # 123), and Converse Chellis (Dkt. # 125). Plaintiffs have filed responses opposing the motions and Defendants have filed replies. These motions are now ripe for ruling.

## I. Background/Procedural History

Plaintiffs in this action are three individuals who have varying degrees of mental and/or physical disabilities.[3] Because of their disabilities, Plaintiffs receive Adult Day

---

[1]Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, is known as the Medicaid Act.

[2]Plaintiffs numbered the paragraphs 1-45 on the first seven pages of the Amended Complaint and then on page eight started back at one. Also, in their prayer for relief, the paragraph numbers start over beginning with one on page seventy of the Amended Complaint. Therefore, to avoid confusion, the court has referred to the pages of the Amended Complaint, rather than the numbered paragraphs.

[3]Plaintiffs state they are bringing this action as a class action pursuant to Rule 23, Fed. R. Civ. P. (Am. Compl. 2, 8-10). However, this action has not been declared a class action and, at this time, there has been no motion filed seeking to certify this action as such.

Health Care Services ("ADHC") and other home and community based services. (Am. Compl. at 2). These services are provided to Plaintiffs through a Medicaid waiver program for persons with disabilities, the Mental Retardation/Related Disabilities ("MR/RD waiver"). *Id*.[4] The South Carolina Department of Health and Human Services ("SCDHHS") contracts with the South Carolina Department of Disabilities and Special Needs ("SCDDSN") to operate the MR/RD waiver program and SCDSSN contracts with local Disabilities and Special Needs ("DSN") Boards.[5] The local DSN Boards in turn contract with private entities to actually provide the ADHC services. The majority of SCDDSN's funding comes through SCDHHS from Medicaid.

Plaintiffs allege that SCDDSN, in violation of state and federal law, notified Plaintiffs of its termination or intent to terminate their ADHC services in an effort to force Plaintiffs to attend Work Activity Centers ("WAC") operated by local DSN Boards for the financial gain of SCDDSN and the local DSN Boards. Specifically, Plaintiffs allege that in 2009 after announcing reductions in MR/RD waiver services due to a budget deficit at SCDDSN, the South Carolina Budget and Control Board ("SCBCB") voted in September 2009 to transfer $2.8 million from a $7 million "reserve" account to "three agencies it

_____

[4]The court notes that 2011 South Carolina Laws Act No. 47, § 13 (eff. June 7, 2011), amends various South Carolina code sections such that the terms "intellectual disability" and "person with intellectual disability" are to replace and have the same meanings as the former terms "mental retardation"' and "mentally retarded." However, federal laws and regulations still use the nomenclature "mental retardation." The court will use the MR/RD terminology which was in effect at the time this case was filed and is used by the parties in their pleadings and memoranda.

[5]The SCDDSN provides services to individuals with head and spinal cord injuries and those with developmental disabilities, such as mental retardation and autism. S.C. Code Ann. § 44-21-10. SCDDSN is led by a director appointed by the South Carolina Commission on Disabilities and Special Needs ("Commission"). S.C. Code Ann. §§ 44-20-220 and 44-20-230. The Commission is an advisory board consisting of seven members appointed by the Governor. S.C. Code Ann. § 44-20-225.

treated as local DSN Boards" to purchase WACs in exchange for Defendant Eugene Laurent's agreement to transfer $3.2 from this fund for the SCBCB to spend on a statewide computer project.  (Am. Compl. at 23).[6]  Plaintiffs also allege the SCBCB voted to spend $7.8 million from the "excess funds" held by SCDSSN to purchase real estate knowing that on January 1, 2010, services would be reduced due to "false claims of 'budget deficits.'" (Am. Compl. at 24).

In addition to actual and punitive damages, Plaintiffs seek declaratory and injunctive relief finding Defendants have violated the ADA, Section 504 of the Rehabilitation Act, and the Medicaid Act, and prohibiting the Defendants from reducing ADHC services.  (Am. Compl. at 70, 71).  Further, Plaintiffs seek an order "requiring Defendants to provide such additional services as shall be medically necessary, as shall be determined by their treating physicians, so as to allow Plaintiff and Class Members to live in the most integrated settings possible in order to prevent regression and to allow them to function with the most independence possible." *Id*.  Finally, Plaintiffs seek an "order  requiring Defendants to provide Medicaid waiver services as shall be determined by the treating physicians to be necessary absent review . . . " as long as the cost of theses services is less than cost of the ICF/MR services.  (Am. Compl. at 71).

## II.  Standard of Review[7]

A motion made pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure

---

[6]At that time, Laurent was the Interim Director of the SCDDSN.

[7]Defendants have filed these motions pursuant to Rule 12(1) and 12(b)(6), Fed. R. Civ. P.  The Fourth Circuit has not resolved which of these rules applies to a motion to dismiss based on Eleventh Amendment immunity. *See Andrews v. Daw*, 201 F.3d 521, 525 n. 2 (4th Cir. 2000) (holding cases are unclear as to whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)). However, the court would reach the same conclusion under either rule.

challenges the court's jurisdiction over the subject matter of the plaintiff's complaint. When the court's subject matter jurisdiction is challenged, the plaintiff bears the burden of proof. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991). When ruling on a 12(b)(1) motion, the Court considers the pleadings, and it may also consider evidence outside of the pleadings without necessarily converting the motion to one for summary judgment. *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (*citing Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768). The moving party will prevail as a matter of law if material jurisdictional issues are not in dispute. *Id*.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of the Plaintiff's Complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).   In evaluating a motion to dismiss under Rule 12(b) (6), the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). The court, however, need not accept as true "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Id*.  The complaint must contain sufficient well-pled facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.  544, 555 (2007). There must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (*citing Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 556.

### III.  Discussion

In their Amended Complaint, Plaintiffs allege eight causes of action: 1) Violations

5

of the ADA against Defendants who were members of the SCBCB in 2009 (Am. Compl. 45-50); 2) Violations of Section 504 against individual Defendants Buscemi, Lacy, Waring, Huntress, Chorey, and Johnson (Am. Compl. 50-53); 3) Violations of 42 U.S.C. § 1983 against individual Defendants Haley, Sanford, Cooper, Eckstrom, Chellis, Leatherman, Forkner, Keck, Butkus, Laurent, Buscemi, Lacy, Waring, Chorney, Huntress, Johnson, and Leitner (Am. Compl. 53-56); 4) Violations of 42 U.S.C. §§1983 and 1988 against all Defendants (Am. Compl. 56-62);[8] 5) Violations of 42 U.S.C. § 1983 (Conspiracy) against Defendants Buscemi, Forkner, Lacy, Waring, Chorey, and Johnson (Am. Compl. 62-64); 6) Violation of the Supremacy Clause against all Defendants (Am. Compl. 64); 7) Violation of RICO against Defendants Haley, Sanford, Butkus, Laurent, Forkner, Lacy, Waring, Chorey, and Johnson (Am. Compl. 64-69); and 8) Neglect, Deliberate Indifference, Assault and Battery, and Intentional Infliction of Emotional Distress against Defendants Babcock Center, Johnson, and the agents and employees of the Babcock Center in regard to the care of only Plaintiff Kobe (Am. Compl. 69-70).

Reviewing the allegations of the Amended Complaint, only Defendants Curtis Loftis and Brian White are being sued solely in their official capacities. (Am. Compl. at 5). The remaining individual Defendants, Mark Sanford, Hugh Leatherman, Daniel Cooper, Richard Eckstrom, Converse Chellis, Anthony Keck, Emma Forkner, Beverly Buscemi, Stanley Butkus, Eugene Laurent, Richard Huntress, Kathi Lacy, Thomas P. Waring, Judy Johnson, Jacob Chorey, and Mary Leitner are specifically being sued in

---

[8]Under this cause of action, Plaintiffs also specifically allege Defendants Butkus, Forkner, Laurent, Buscemi, Lacy, Waring, Chorey, and Johnson "have acted with an evil motive or intent to deny services to Plaintiffs."  (Am. Compl. at 61).

both their individual and official capacities. (Am. Compl. 5-8).[9]  While there are no specific allegations in the Amended Complaint as to the capacity in which Defendant Haley is being sued, Plaintiffs state in their memorandum that Governor Haley is being sued only in her official capacity.  (Dkt. # 81 - Pls.' Mem. Opp. Mot. to Dismiss at 4). The court will address each motion in turn.

**1.  Defendant Haley's Motion to Dismiss[10]**

As noted above, Defendant Haley is being sued solely in her official capacity as Governor of South Carolina and Chairman of the SCBCB. Governor Haley has filed a motion to dismiss on the ground that Plaintiffs' claims against her are barred by the Eleventh Amendment.  Plaintiffs contend that Governor Haley is not entitled to Eleventh Amendment immunity because she has supervisory responsibility over DHHS and DDSN and she is responsible for the acts of former Governor Mark Sanford.  (Dkt. # 81- Pls.' Mem. Opp. Mot. to Dismiss at 7). For the reasons discussed below, the court grants Governor Haley's Motion to Dismiss.

The Eleventh Amendment bars suits against a State in federal court.[11]

---

[9]The court notes that the caption of the Amended Complaint is somewhat misleading as it lists most of the Defendants as being sued in their capacities as members of the SCBCB.  It does not state any of the Defendants are being sued in their individual capacities.

[10]The court notes Plaintiffs argue that the court should not dismiss Plaintiffs' claims pending a decision by the Supreme Court in *Douglas v. Independent Living Centers*, ___ U.S. ___, 132 S.Ct. 1204, 182 L.Ed.2d 101 (2012). (Dkt. # 81 - Pls.' Mem. Opp. Mot. to Dismiss at 19-20). That case was decided on February 22, 2012, and thus the request to postpone a resolution of the instant motion is now moot. Moreover, *Douglas* is wholly inapplicable.  In *Douglas* the Supreme Court remanded the action to the Ninth Circuit to address whether a plaintiff may bring a Supremacy Clause challenge where the allegedly non-compliant state law has been approved by CMS. The action before this Court does not challenge a state statute, let alone one that has been approved by CMS.

[11]The Eleventh Amendment provides:

Additionally, the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). However, Eleventh Amendment immunity is not absolute. *See Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a narrow exception for claims brought against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The *Ex parte Young* exception creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. The *Ex parte Young* exception "applies only when there is an ongoing violation of federal law that can be cured by prospective relief. It does not apply when the alleged violation of federal law occurred entirely in the past." *Debauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

> *Ex parte Young* requires a "special relation" between the state officer sued and the challenged statute to avoid the Eleventh Amendment's bar. *Ex parte Young*, 209 U.S. at 157, 28 S.Ct. 441. "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir.1996) (internal quotation marks omitted). Thus, "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in

---

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

> every action attacking the constitutionality of a state statute."
> *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir.1979).

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001). As long as the state official "has some connection with the enforcement of the act," that official is an "appropriate defendant." *Shell Oil v. Noel*, 608 F.2d 208, 211 (1st Cir.1979). "It is a question of federal jurisdictional law whether the connection is sufficiently intimate to meet the requirements of *Ex parte Young*." *Id.*

Here, Governor Haley contends that the *Ex parte Young* exception does not apply for two reasons: (1) she has no connection with the challenged acts; and (2) Plaintiffs are seeking retrospective, not prospective, relief in their claims against her. Plaintiffs argue Governor Haley is liable due to her supervisory responsibility over the SCDHHS and SCDDSN and her enforcement authority as governor to appoint and remove the Director of DHHS and members of the SCDDSN Commission. Further, Plaintiffs contend that Governor Haley's name is on the SCDHHS letterhead, the SCDHSS is part of her cabinet, Governor Haley personally sought out and hired the SCDHHS's director, and Governor Haley has stated in the media that she is working closely with the director to provide as much healthcare for South Carolinians for as little as possible. (*Id*. at 12-13). Finally, Plaintiffs argue that Governor Haley joined thirty-one other governors in writing to the President for Medicaid reform which Plaintiffs contend calls for elimination of "'excessive constraints' which Congress enacted to protect Plaintiffs and providers in exchange for federal funding." (Dkt. # 81 - Pls.' Mem. at 13 and Ex. 16 and 17).[12]

---

[12]Plaintiffs also cite to numerous other cases in support of their argument that Haley is not entitled to Eleventh Amendment immunity, including *Kimble v. Solomon*, 599 F.2d 599 (4th Cir. 1979), and *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990). However, these cases are inapplicable here. In *Kimble*, in the context of Eleventh Amendment immunity, the court addressed whether the relief being sought was

While Defendant Haley as the Governor of South Carolina has the power to appoint and general supervisory authority, neither appointment power nor general supervisory power over persons responsible for enforcing a challenged provision will subject an official to suit.[13] *Waste Mgmt. Holdings*, 252 F.3d at 33 (holding an official's general authority to enforce the laws of a state is not sufficient to make a government official a proper party in an action challenging a law). *See also Kuck v. Danaher*, 822 F. Sipp. 2d 109 (D. Conn. 2011)(citing *Kelly v. Burks*, 414 F.Supp.2d 681, 686 (E.D. Ky. 2006); *D.G. ex rel. Stricklin v. Henry*, 591 F. Supp. 2d 1186, 1189 (N.D. Okla. 2008) (holding despite governor's power to make appointments to the entity that acted unconstitutionally, the governor is not responsible for actually administering the foster case system); *LensCrafters, Inc. v. Sundquist*, 184 F. Supp. 2d 753, 757-59 (M.D.Tenn. 2002) (finding Eleventh Amendment bars suit against governor when only nexus between governor and challenged action by board was governor's power to make appointments to board); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1175-76 (D. Ariz. 2001)

---

prospective or retrospective. In *Wilder*, the Supreme Court held only that state officials could be sued under § 1983 for violations of the Medicaid Act. *See Fla. Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health & Rehabilitative Servcs.*, 225 F.3d 1208, 1226 n. 13 (11th Cir. 2000) (holding the Court in *Wilder* did not address any Eleventh Amendment issue and only addressed the question of whether the Boren Amendment is enforceable in an action by health care providers under § 1983). Governor Haley is not disputing that there exists a private cause of action under § 1983 against state officials for violations of the Medicaid Act nor is she arguing that a governor cannot be sued for such violations for prospective relief. Rather, she contends that she does not have the requisite connections to the alleged actions in this case to apply the *Ex parte Young* exception to Eleventh Amendment immunity. (Def.'s Reply Mem. 4).

[13]Plaintiffs cite to several cases discussing when supervisory liability may be imposed for constitutional injuries: *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), and *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984). (Pls.' Mem. at 8). These cases and others discussing supervisory liability in the context of a § 1983 action are simply not applicable to the specific issue raised in this motion to dismiss based upon Eleventh Amendment immunity.

(dismissing claim against Governor who signed allegedly unconstitutional bill into law and appointed the cabinet official responsible for enforcing that law).

Furthermore, the remaining factors which Plaintiffs contend provide a nexus are also insufficient.   A governor's name on the letterhead of an agency is really nothing more than a formality or acknowledgment of the structure of the state's government. Furthermore, Governor Haley's general policies or opinions on budgetary or political matters also do not provide a  sufficient nexus.  *Waste Mgmt. Holdings*, 252 F.3d at 331 ("The fact that [governor] has publicly endorsed and defended the challenged statutes does not alter our analysis.").

Plaintiffs also contend Governor Haley is responsible for "the personal acts of [former] Governor Sanford" in an alleged conspiracy to terminate Plaintiffs' ADHC in order to benefit a Lexington County corporation.  (Pls.' Mem. Opp. Mot to Dismiss at 3, 4). Plaintiffs allege that former Governor Sanford as chairman of the SCBCB was involved in a scheme to divert funds from an excess fund account to purchase three workshops which caused the State to lose more that $10 million in matching Medicaid funds.  (Dkt. # 81- Pls.' Mem. Opp. Motion to Dismiss at 7).[14]

The United States Supreme Court has established that the *Ex parte Young* exception only applies to prospective injunctive relief. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Retrospective relief, on the other hand, is barred by the Eleventh Amendment.  *Green v. Mansour*, 474 U.S. 64, 68 (1985).   Likewise, a declaratory judgment against state officials declaring that they

---

[14]The *Ex Parte Young* exception does not apply to actions against state officials seeking to compel compliance with state law. *Antrican v. Odom*, 290 F.3d 178 (4th Cir. 002). Accordingly, if Plaintiffs are seeking a declaration that Defendants violated any state law, they are unable to do so.

violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment. *Id.* at 67. Governor Haley is entitled to Eleventh Amendment immunity for Plaintiffs' claims based upon former Governor's Sanford's prior acts for which Plaintiffs are seeking only retrospective relief.

Moreover, as a practical matter, to impose a prospective injunction on Governor Haley to cure any alleged Medicaid violations would have no effect. The hearing and notice requirements set forth in 42 C.F.R. § 431 are placed upon the state Medicaid agency and not the governor. Each state's Medicaid plan must specify a single state agency designated to administer the Medicaid plan, and this agency cannot delegate its authority to exercise discretion in the administration or supervision of the plan. 42 C.F.R. § 431.10(a) and (e). In South Carolina, the South Carolina Department of Health and Human Services ("SCDHHS") is the state agency designated to administer and supervise the Medicaid plan. S.C. Code Ann. § 44-6-30(1). Further, while 42 C.F.R. § 430.12 provides the governor is to review and comment on a state's Medicaid plan, this does not create any enforcement rights in the governor and as Plaintiffs allege in their Amended Complaint, "SCDDSN is responsible, under contract with SCDHHS, for the day-to-day operations of the Medicaid waiver programs in the State . . . " (Am. Compl. at 5-6). Accordingly, Defendant Haley's Motion to Dismiss is granted and she is dismissed from this action.[15]

### 2. Defendants Loftis and White's Motion to Dismiss

Similarly, to Defendant Haley, in their Motion to Dismiss, Defendants Loftis and White contend, inter alia, that as members of the SCBCB, they have no special relation

---

[15]Because the court concludes that Governor Haley is entitled to Eleventh Amendment immunity and should be dismissed, the court declines to address the other grounds Defendant Haley raises for dismissal.

to the acts challenged by Plaintiffs and therefore they are entitled to Eleventh Amendment immunity. (Dkt. # 99). Plaintiffs name these two Defendants as successors of former SCBCB members Defendants Converse Chellis and Daniel Cooper. (Am. Compl. at 5).

As noted above, in Count One, Plaintiffs allege Defendants who were members of the SCBCB violated the ADA by failing to insure that SCDDSN funds were spent appropriately for services provided to Plaintiffs. (Am. Compl. at 46). In Count Two, Plaintiffs allege these Defendants have violated Section 504 by failing to insure that the funds allocated to the SCDDSN were spent appropriately. (Am. Compl. at 51). In Counts Three and Four, Plaintiffs allege claims pursuant to 42 U.S.C. § 1983 for violations of the ADA, Medicaid, and the Section 504 for diverting funds from SCDDSN. (Am. Compl. at 56-57).[16] Plaintiffs' claims against these two individual Defendants revolve around the SCBCB's vote in 2009 to allow SCDSSN to purchase real estate with funds from an excess account. It is undisputed that Defendants Loftis and White were not members of the SCBCB when these alleged acts occurred and are being sued only in their official capacities as successors to the former SCBCB members.

As noted above, the *Ex parte Young* exception only applies to prospective injunctive relief and a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment. Defendants Loftis and White are entitled to Eleventh Amendment immunity for Plaintiffs' claims based upon the actions of former members of SCBCB for which Plaintiffs are seeking only retrospective relief. Furthermore, as for any

---

[16]The court notes that in Count Three while Plaintiffs list various individual Defendants and make allegations against them, none of the allegations in Count Three specifically refer to these two Defendants. (Am. Compl. at 53-56).

13

prospective relief, as discussed in regard to Governor Haley, these Defendants as members of the SCBCB do not have any control or enforcement rights over any agency regarding the Plaintiffs' ADHC or other Medicaid services. Therefore, to impose a prospective injunction on these two Defendants would have no effect whatsoever. Accordingly, Defendants Loftis and White's Motion to Dismiss is granted and these Defendants are dismissed from this action.

### 3.  Defendant Cooper's Motion to Dismiss

As noted above, Defendant Cooper is sued in both his individual and official capacities.  Plaintiffs' claims against Defendant Cooper involve allegations regarding his past conduct when he was a member of the SCBCB.  In his motion to dismiss, Defendant Cooper contends, inter alai, that he is entitled to legislative and Eleventh Amendment immunity.  Plaintiffs contend that they are not suing Cooper in his legislative capacity.  Plaintiffs also contend that because the unauthorized actions of the individual SCBCB members were not within the sphere of legitimate legislative activities, Cooper is not entitled to legislative immunity.  (Pls.' Mem. Opp. Mot. to Dismiss 2, 7). Plaintiffs specifically state that "[a]ll of the relief requested by the Plaintiffs as to Defendant Cooper is prospective"  (Dkt. # 124 - Pls.' Mem. Opp. Mot. to Dismiss at 12),

As to Plaintiffs' claims against Cooper in his official capacity, the Eleventh Amendment bars these claims.  As stated above, the *Ex parte Young* exception to Eleventh Amendment immunity only applies to prospective injunctive relief. Plaintiffs would not be able to obtain any prospective injunctive relief from Defendant Cooper in his official capacity as he is no longer a member of the SCBCB and would have no authority to provide such relief.  *Kuck*, 822 F.Supp.2d 109, 148.[17]  Furthermore,

---

[17]Moreover, as discussed herein, a current member of the SCBCB would not have any control or enforcement rights over any agency regarding the Plaintiffs' ADHC

Plaintiffs also cannot obtain prospective injunctive relief from Cooper in his individual capacity as he would not have the authority to provide such relief in his individual capacity. *See DeLoreto v. Ment*, 944 F.Supp. 1023, 1031 (D.Conn.1996) (finding that "injunctive relief of reinstatement could only be awarded against Defendants in their official capacities. Clearly, in their individual capacities they have no authority to reinstate Plaintiffs."); *see also Smith v. Plati*, 56 F.Supp.2d 1195, 1203 (D.Colo.1999) (dismissing claims against state official in his individual capacity because the relief plaintiff requested could only be obtained against the defendant in his official capacity). All of Plaintiffs' claims against Cooper should be dismissed as Cooper would have absolutely no role to play in regard to providing Plaintiffs with any prospective injunctive relief.[18]  Accordingly, Cooper's motion to dismiss is granted.

As an additional ground for dismissal, the court finds Cooper is entitled to legislative immunity for all of Plaintiffs' claims against him in his individual capacity.  In *Bogan v. Scott–Harris*, 523 U.S. 44, 53–54 (1998), the Supreme Court held that city council members were entitled to absolute immunity from § 1983 liability for "actions taken in the sphere of legitimate legislative activity."  The Court found that the council's action in eliminating certain services was legislative in substance because their action "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56. This absolute legislative immunity does not apply only to legislators. *Id.* at 55. The Supreme

---

or other Medicaid services.

[18]Additionally, as to allegations regarding members of the SCBCB, Plaintiffs do not allege ongoing violations of the law, a failure which is fatal to their request for injunctive relief. *See Merryfield v. Jordan*, 431 Fed. Appx. 743, 746 (10th Cir. 2011) (noting that a plaintiff may seek prospective injunctive relieve against state officials in federal court only when he alleges ongoing violations of federal law, and not where he merely alleges prior violations).

15

Court acknowledged that executive branch officials are entitled to legislative immunity when they perform legislative functions such as making discretionary policy decisions that implicate budgetary priorities and the provision of public services. *Id*. at 55-56.[19] "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Legislative immunity only extends to defendants sued in their individual capacities. *Doe v. Pittsylvania County, Va.*, 842 F.Supp.2d 906 (W.D.Va. 2012).

Recently, the Fourth Circuit Court of Appeals addressed legislative immunity in *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 470 (4th Cir. 2012). In *Kennsington*, local volunteer fire and rescue departments and several former administrative employees sued the county, county council, and county officials contending that funding for the administrative personnel in the departments was eliminated in retaliation for the departments' opposition to legislation which would have enacted an ambulance fee. The Fourth Circuit Court of Appeals noted that legislative acts are ones which generally bear the marks of public decisionmaking by observing formal legislative procedures. The court held that, despite allegations of an improper retaliatory motive, the county officials were entitled to legislative immunity for enacting a facially valid budget which eliminated the funding for the administrative support positions. *Id*. Further, the court emphasized that while the county reduced the departments' budgets, it was the departments which decided how to address the shortfall and terminated the individual administrative personnel. *Id*. at 469, 472.

Here, the acts of the SCBCB are "ones which generally bear the marks of public

---

[19]Legislative immunity applies to claims for declaratory and injunctive relief, as well as claims for damages. *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732–33 (1980).

decisionmaking by observing formal legislative procedures." The SCBCB had the authority to take the action which it did[20] and reviewing the minutes of the SCBCB meeting, the process appears facially to have been proper.[21]    The minutes from the meeting show that proper notice was provided of the meeting pursuant to S.C. Code Ann. § 30-4-80, the meeting was an open meeting, and the funds were expended pursuant to S.C. Code Ann. § 44-20-1170 with the approval of the DSSN Board.[22] Further, it was the DSSN Boards which have reduced or attempted to reduce the services provided to Plaintiffs. Based on the foregoing, the court concludes that, Defendant Cooper is entitled to legislative immunity.    Here, voting to approve SCDDSN's purchase of real estate with excess debt service funds was clearly a facially

---

[20]Plaintiffs themselves allege in their complaint that the SCBCB is responsible for "purchasing, personnel and real property transactions involving state and federal funds." (Am. Compl. at 4).

[21]Typically on a motion to dismiss, a court cannot consider documents that are not expressly incorporated into the complaint, but there are exceptions for "official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."  *See Witthohn v. Fed. Ins. Co.*, 164 Fed. App'x 395, 396, 2006 WL 228621, at *1 (4th Cir. 2006) (unpublished).  Here, the court considers the minutes of the SCBCB meeting as it is central to plaintiffs' claims.  Furthermore, both Plaintiffs and one of the Defendants have attached the minutes as an exhibit to their memoranda (Dkt. # 81- Pls.' Mem. Opp. Mot. to Dismiss Ex. 8; 126 - Def. Cooper's Reply Mem. Ex. A) and its authenticity has not been questioned.

[22]Section 44-20-1170 (B) provides:

If the accumulation of revenues of the commission in the special fund exceeds the payment due or to become due during the then current fiscal year and an additional sum equal to the maximum annual debt service requirement of the obligations for a succeeding fiscal year, the State Budget and Control Board may permit the commission to withdraw the excess and apply it to improvements that have received the approval of the board or to transfer the excess out of the special fund for contract awards to local disabilities and special needs boards for needed improvements at the local level and for nonrecurring prevention, assistive technology, and quality initiatives at the regional centers and local boards.

valid legislative action. Accordingly, based on the foregoing, Defendant Cooper's Motion to Dismiss is granted and he is dismissed from this action.[23]

### 4. Defendant Chellis' Motion to Dismiss

As stated above, Defendant Chellis is being sued in both his individual and official capacities. Plaintiffs state that they are suing Chellis for only prospective relief and attorney's fees. (Dkt. # 127 - Pls.' Mem. Opp. Mot. to Dismiss at 4).[24] In his Motion to Dismiss, Defendant Chellis, a former South Carolina State Treasurer and former member of the SCBCB, contends, inter alia, that Plaintiffs' claims against him are barred by legislative and Eleventh Amendment immunity. For the same reasons as Defendant Cooper, the court finds that Defendant Chellis is entitled to legislative and Eleventh Amendment immunity and likewise the court notes that even if it could award Plaintiffs prospective injunctive relief against this Defendant, such injunctive relief would be ineffective. Defendant Chellis is not involved in any ongoing constitutional deprivations and could not provide Plaintiffs, should they prevail, with the prospective injunctive relief they seek. The undisputed fact is that, as a former SCBCB member, he would have absolutely no role to play in regard to providing Plaintiffs with any prospective relief. Accordingly, Defendant Chellis' Motion to Dismiss is granted and he

---

[23]Because the court concludes that Defendant Cooper is entitled to legislative and Eleventh Amendment immunity and should be dismissed, the court declines to address the other grounds he raises for dismissal.

[24]Plaintiffs in their response, citing to their response to Defendant Loftis and White's Motion to Dismiss, state that they alleged that "Chellis failed to assure that appropriations of money and the application thereof appeared on the Treasury books." (Dkt. # 127 - Pls.' Mem. Opp. Mot. to Dismiss at 3). While Plaintiffs may have raised this allegation in their memorandum, they did not make any such allegations in their Amended Complaint. In fact, in their Amended Complaint, Plaintiffs allege only that they are suing Chellis for actions taken as a member of the SCBCB. (Am. Compl. 5, 23-24, 46, ). While Chellis was a member of the SCBCB because he was the State Treasurer, there are no separate allegations regarding Chellis and his duties as State Treasurer.

is dismissed from this action.[25]

## IV.  Conclusion

Based on the foregoing, Defendants' Motions to Dismiss (Dkt. # 75, 99, 123, and 125) are **GRANTED** and Defendants Haley, Loftis, White, Cooper, and Chellis are dismissed from this action.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge


Greenville, South Carolina
August 10, 2012

---

[25]Because the court concludes that Defendant Chellis is entitled to legislative and Eleventh Amendment immunity and should be dismissed, the court declines to address the other grounds he raises for dismissal.