IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Kobe and Mark, | ) | |
| | ) | C/A No. 3:11–1146-TMC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| Nikki Haley, in her capacity as | ) | |
| Governor and Chairman of the | ) | |
| South Carolina Budget and Control | ) | |
| Board;  Daniel Cooper, Converse | ) | |
| Chellis and Mark Sanford, in their | ) | |
| capacities as former members of | ) | |
| the South Carolina Budget and | ) | |
| Control Board; Hugh Leatherman | ) | |
| and Richard Eckstrom, in their | ) | |
| capacities as members of the South | ) | |
| Carolina Budget and Control Board; | ) | |
| Curtis Loftis and Brian White, as | ) | |
| members of the South Carolina | ) | |
| Budget and Control Board, Anthony | ) | |
| Keck, in his capacity as the Director | ) | |
| of the South Carolina Department | ) | |
| of Health and Human Services, | ) | |
| Emma Forkner, in her capacity as | ) | |
| the former Director of the South | ) | |
| Carolina Department of Health | ) | |
| and Human Services, Beverly | ) | |
| Buscemi in her capacity as Director | ) | |
| of the South Carolina Department | ) | |
| of Disabilities and Special Needs, | ) | |
| Eugene A. Laurent, former Interim | ) | |
| Director of the South Carolina | ) | |
| Department of Disabilities and | ) | |
| Special Needs; Stanley Butkus, | ) | |
| former Director of the South Carolina | ) | |
| Department of Disabilities and | ) | |
| Special Needs; Richard Huntress, | ) | |
| in his capacity as Commissioner | ) | |
| of the South Carolina Department | ) | |
| of Disabilities and Special Needs; | ) | |
| Kathi Lacy, Thomas P. Waring and | ) | |
| Jacob Chorey, in their capacities | ) | |
| as employees of the South Carolina | ) | |
| Department of Disabilities and | ) | |
| Special Needs, Mary Leitner, in | ) | |
| her capacity as the Director of the | ) | |

| | |
|---|---|
| Richland Lexington Disabilities and Special Needs Board; the Babcock Center, Judy Johnson, in her capacity as the Director of the Babcock Center and other Unnamed Actors Associated with the Babcock Center, | ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

In their Amended Complaint, Plaintiffs seek actual and punitive damages, and declaratory and injunctive relief for violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 ("Section 504"); the Medicaid Act;[1] and 42 U.S.C. §§ 1983 and 1985. (ECF No. 65 - Am. Compl. at 3). This matter is before the court on a motion to dismiss, or alternatively for summary judgment filed by Defendants Hugh Leatherman and Richard Eckstrom (herein referred to as "Moving Defendants"). (ECF No. 150). Plaintiffs have filed responses opposing the motion and Defendants filed a reply. (ECF Nos. 180 and 186).

### I. Background/Procedural History

Defendant Leatherman is a member of the South Carolina General Assembly and the South Carolina Budget and Control Board ("SCBCB"). Defendant Eckstrom is the South Carolina Comptroller General and a member of the SCBCB. Plaintiffs in this action are two individuals who have varying degrees of mental and/or physical disabilities.[2] Because of their disabilities, Plaintiffs receive Adult Day Health Care Services ("ADHC") and other home and community based services. (Am. Compl. at 2). These services are provided to Plaintiffs through

---

[1] Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396v, is known as the Medicaid Act.

[2] Plaintiffs state they are bringing this action as a class action pursuant to Rule 23, Fed. R. Civ. P. (Am. Compl. 2, 8-10). However, this action has not been declared a class action and, at this time, there has been no motion filed seeking to certify this action as such.

2

a Medicaid waiver program for persons with disabilities, the Mental Retardation/Related Disabilities ("MR/RD waiver"). *Id.*[3] The South Carolina Department of Health and Human Services ("SCDHHS") contracts with the South Carolina Department of Disabilities and Special Needs ("SCDDSN") to operate the MR/RD waiver program and SCDSSN contracts with local Disabilities and Special Needs ("DSN") Boards. The local DSN Boards in turn contract with private entities to actually provide the ADHC services. The majority of SCDDSN's funding comes through SCDHHS from Medicaid.

Plaintiffs allege that SCDDSN, in violation of state and federal law, notified Plaintiffs of its termination or intent to terminate their ADHC services in an effort to force Plaintiffs to attend Work Activity Centers ("WAC") operated by local DSN Boards for the financial gain of SCDDSN and the local DSN Boards. Specifically, Plaintiffs allege that in 2009 after announcing reductions in MR/RD waiver services due to a budget deficit at SCDDSN, the SCBCB voted in September 2009 to transfer $2.8 million from a $7 million "reserve" account to "three agencies it treated as local DSN Boards" to purchase WACs in exchange for Defendant Eugene Laurent's agreement to transfer $3.2 from this fund for the SCBCB to spend on a statewide computer project. (Am. Compl. at 23). Plaintiffs also allege the SCBCB voted to spend $7.8 million from the "excess funds" held by SCDSSN to purchase real estate knowing that on January 1, 2010, services would be reduced due to "false claims of 'budget deficits.'" (Am. Compl. at 24).

In addition to actual and punitive damages, Plaintiffs seek declaratory and injunctive relief finding Defendants have violated the ADA, Section 504 of the Rehabilitation Act, and the

---

[3]The court notes that 2011 South Carolina Laws Act No. 47, § 13 (eff. June 7, 2011), amends various South Carolina code sections such that the terms "intellectual disability" and "person with intellectual disability" are to replace and have the same meanings as the former terms "mental retardation'" and "mentally retarded." However, federal laws and regulations still use the nomenclature "mental retardation." The court will use the MR/RD terminology which was in effect at the time this case was filed and is used by the parties in their pleadings and memoranda.

3

Medicaid Act, and prohibiting the Defendants from reducing ADHC services. (Am. Compl. at 70, 71). Further, Plaintiffs seek an order "requiring Defendants to provide such additional services as shall be medically necessary, as shall be determined by their treating physicians, so as to allow Plaintiff and Class Members to live in the most integrated settings possible in order to prevent regression and to allow them to function with the most independence possible." *Id*. Finally, Plaintiffs seek an "order requiring Defendants to provide Medicaid waiver services as shall be determined by the treating physicians to be necessary absent review . . . " as long as the cost of theses services is less than cost of the ICF/MR services. (Am. Compl. at 71).

## II. Standard of Review[4]

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled

---

[4]When reviewing a motion to dismiss, if the court considers matters outside the pleadings, as the court does here, the court must treat the motion as a motion for summary judgment. Fed.R.Civ.P. 12(d); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

4

to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

### III. Discussion

In their Amended Complaint, Plaintiffs allege eight causes of action: 1) Violations of the ADA against Defendants who were members of the SCBCB in 2009 (Am. Compl. 45-50); 2) Violations of Section 504 against individual Defendants Buscemi, Lacy, Waring, Huntress, Chorey, and Johnson (Am. Compl. 50-53); 3) Violations of 42 U.S.C. § 1983 against individual Defendants Haley, Sanford, Cooper, Eckstrom, Chellis, Leatherman, Forkner, Keck, Butkus, Laurent, Buscemi, Lacy, Waring, Chorney, Huntress, Johnson, and Leitner (Am. Compl. 53-56); 4) Violations of 42 U.S.C. §§1983 and 1988 against all Defendants (Am. Compl. 56-62); 5) Violations of 42 U.S.C. § 1983 (Conspiracy) against Defendants Buscemi, Forkner, Lacy, Waring, Chorey, and Johnson (Am. Compl. 62-64); 6) Violation of the Supremacy Clause against all Defendants (Am. Compl. 64); 7) Violation of RICO against Defendants Haley,

Sanford, Butkus, Laurent, Forkner, Lacy, Waring, Chorey, and Johnson (Am. Compl. 64-69); and 8) Neglect, Deliberate Indifference, Assault and Battery, and Intentional Infliction of Emotional Distress against Defendants Babcock Center, Johnson, and the agents and employees of the Babcock Center in regard to the care of only Plaintiff Kobe (Am. Compl. 69-70). Reviewing the allegations of the Amended Complaint, the Moving Defendants are specifically being sued in both their individual and official capacities. (Am. Compl. 5-8).[5]

The Moving Defendants contend they should be dismissed on the grounds that: 1) Plaintiffs' claims against them are barred by the Eleventh Amendment, 2) legislative, executive, and qualified immunity, and the South Carolina Tort Claims Act bar this action: 3) there is not a case or controversy between Plaintiff and the Moving Defendants; and 4) the claims against the Moving Defendants are without merit. (Defs.' Mem. Supp. Summ. J. Mot. at 2). Plaintiffs contend, inter alia, that 1) the Moving Defendants are not entitled to Eleventh Amendment immunity; and 2) the Moving Defendants are not protected by legislative or executive immunity. For the reasons discussed below, the court grants Defendants Leatherman and Eckstrom's Motion for Summary Judgment.

**Eleventh Amendment Immunity**

The Eleventh Amendment bars suits against a State in federal court.[6] Additionally, the Eleventh Amendment "does not permit judgments against state officers declaring that they

---

[5]The court notes that the caption of the Amended Complaint is somewhat misleading as it lists most of the Defendants as being sued in their capacities as members of the SCBCB. It does not state any of the Defendants are being sued in their individual capacities.

[6]The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.

violated federal law in the past." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). However, Eleventh Amendment immunity is not absolute. *See Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized a narrow exception for claims brought against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). The *Ex parte Young* exception creates a fiction by allowing a person to enjoin future state action by suing a state official for prospective injunctive relief rather than the state itself. The *Ex parte Young* exception "applies only when there is an ongoing violation of federal law that can be cured by prospective relief. It does not apply when the alleged violation of federal law occurred entirely in the past." *Debauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999).

The United States Supreme Court has established that the *Ex parte Young* exception only applies to prospective injunctive relief. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Retrospective relief, on the other hand, is barred by the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 68 (1985). Likewise, a declaratory judgment against state officials declaring that they violated federal law in the past constitutes retrospective relief, and is barred by the Eleventh Amendment. *Id*. at 67.

As noted above, in Count One, Plaintiffs allege the Moving Defendants, members of the SCBCB, violated the ADA by failing to insure that SCDDSN funds were spent appropriately for services provided to Plaintiffs. (Am. Compl. at 46). In Count Two, Plaintiffs allege the Moving Defendants have violated Section 504 by failing to insure that the funds allocated to the SCDDSN were spent appropriately. (Am. Compl. at 51). In Counts Three and Four, Plaintiffs allege claims pursuant to 42 U.S.C. § 1983 for violations of the ADA, Medicaid, and the Section

7

504 for diverting funds from SCDDSN. (Am. Compl. at 56-57).[7] Plaintiffs' claims against the Moving Defendants revolve around the SCBCB's vote in 2009 to allow SCDSSN to purchase real estate with funds from an excess account.[8]

The *Ex parte Young* exception to Eleventh Amendment immunity only applies to prospective injunctive relief. Here, Plaintiffs would not be able to obtain any prospective injunctive relief from these Defendants in their official capacities as they would not have any control or enforcement rights over any agency regarding the Plaintiffs' ADHC or other Medicaid services. Furthermore, Plaintiffs also cannot obtain prospective injunctive relief from these Defendants in their individual capacities as they would not have the authority to provide such relief in their individual capacities. *See DeLoreto v. Ment*, 944 F.Supp. 1023, 1031 (D. Conn.1996) (finding that "injunctive relief of reinstatement could only be awarded against Defendants in their official capacities. Clearly, in their individual capacities they have no authority to reinstate Plaintiffs."); *see also Smith v. Plati*, 56 F.Supp.2d 1195, 1203 (D. Colo. 1999) (dismissing claims against state official in his individual capacity because the relief plaintiff requested could only be obtained against the defendant in his official capacity). Plaintiffs' claims against these Defendants should be dismissed as they would have absolutely no role to play in regard to providing Plaintiffs with any prospective injunctive relief.[9]

---

[7]The court notes that in Count Three Plaintiffs list various individual Defendants and make allegations against them; however, none of the allegations in Count Three specifically refer to the Moving Defendants. (Am. Compl. at 53-56).

[8]In their response, Plaintiffs contend that a reasonable jury could determine that the Moving Defendants have participated in a racketeering activity. (ECF No. 180 at 15). However, reviewing the Amended Complaint, in Count Seven, Plaintiffs specifically allege violations of RICO against only Defendants Haley, Sanford, Butkis, Laurent, Forkner, Lacy, Waring, Chorey, and Johnson. (Am. Compl. at 64).

[9]While Plaintiffs attempt in their response to raise issues regarding ongoing violations (ECF No. 180 at 4-9), reviewing the Amended Complaint Plaintiffs did not allege any ongoing violations against these Moving Defendants, which is fatal to their request for injunctive relief. *See Merryfield v. Jordan*, 431 Fed. Appx. 743, 746 (10th Cir. 2011) (noting that a plaintiff may

**Legislative Immunity**

As an additional ground for summary judgment, the Moving Defendants contend they are entitled to legislative immunity. Plaintiffs contend that because the unauthorized actions of the individual SCBCB members were not within the sphere of legitimate legislative activities, the Moving Defendants are not entitled to legislative immunity. (Pls.' Mem. Opp. Summ. J. Mot. at 10).

The court finds the Moving Defendants are entitled to legislative immunity for all of Plaintiffs' claims against them in their individual capacity. In *Bogan v. Scott–Harris*, 523 U.S. 44, 53–54 (1998), the Supreme Court held that city council members were entitled to absolute immunity from § 1983 liability for "actions taken in the sphere of legitimate legislative activity." The Court found that the council's action in eliminating certain services was legislative in substance because their action "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56. This absolute legislative immunity does not apply only to legislators. *Id.* at 55. The Supreme Court acknowledged that executive branch officials are entitled to legislative immunity when they perform legislative functions such as making discretionary policy decisions that implicate budgetary priorities and the provision of public services. *Id.* at 55-56.[10]  "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Legislative immunity only extends to defendants sued in their individual capacities. *Doe v. Pittsylvania County, Va.*, 842 F.Supp.2d 906 (W.D.Va. 2012).

Recently, the Fourth Circuit Court of Appeals addressed legislative immunity in

---

seek prospective injunctive relieve against state officials in federal court only when he alleges ongoing violations of federal law, and not where he merely alleges prior violations).

[10]Legislative immunity applies to claims for declaratory and injunctive relief, as well as claims for damages. *Supreme Court of Virginia v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732–33 (1980).

*Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 470 (4th Cir. 2012). In *Kennsington*, local volunteer fire and rescue departments and several former administrative employees sued the county, county council, and county officials contending that funding for the administrative personnel in the departments was eliminated in retaliation for the departments' opposition to legislation which would have enacted an ambulance fee. The Fourth Circuit Court of Appeals noted that legislative acts are ones which generally bear the marks of public decisionmaking by observing formal legislative procedures. The court held that, despite allegations of an improper retaliatory motive, the county officials were entitled to legislative immunity for enacting a facially valid budget which eliminated the funding for the administrative support positions. *Id*. Further, the court emphasized that while the county reduced the departments' budgets, it was the departments which decided how to address the shortfall and terminated the individual administrative personnel. *Id*. at 469, 472.

Here, the acts of the SCBCB are "ones which generally bear the marks of public decisionmaking by observing formal legislative procedures." The SCBCB had the authority to take the action which it did, and reviewing the minutes of the SCBCB meeting, the process appears facially to have been proper.[11] The minutes from the meeting show that proper notice was provided of the meeting pursuant to S.C. Code Ann. § 30-4-80, the meeting was an open meeting, and the funds were expended pursuant to S.C. Code Ann. § 44-20-1170 with the approval of the DSSN Board.[12] Further, it was the DSSN Boards which have reduced or

---

[11]Plaintiffs themselves allege in their complaint that the SCBCB is responsible for "purchasing, personnel and real property transactions involving state and federal funds." (Am. Compl. at 4).

[12]Section 44-20-1170 (B) provides:

> If the accumulation of revenues of the commission in the special fund exceeds the payment due or to become due during the then current fiscal year and an additional sum equal to the maximum annual debt service requirement of the obligations for a succeeding fiscal year, the State Budget and Control Board may

attempted to reduce the services provided to Plaintiffs. Here, voting to approve SCDDSN's purchase of real estate with excess debt service funds was clearly a facially valid legislative action.[13]  Based on the foregoing, the court concludes that, the Moving Defendants are entitled to legislative immunity.

## Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment (ECF No. 150) is **GRANTED** and Defendants Leatherman and Eckstrom are dismissed from this action.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>United States District Judge

Anderson, South Carolina
August 12, 2013

---

permit the commission to withdraw the excess and apply it to improvements that have received the approval of the board or to transfer the excess out of the special fund for contract awards to local disabilities and special needs boards for needed improvements at the local level and for nonrecurring prevention, assistive technology, and quality initiatives at the regional centers and local boards.

[13] The court notes that in their response to this motion, Plaintiffs also contend that these Defendants should not be dismissed to prevent DDSN and DHHS from shifting blame of any alleged wrongdoing to the SCBCB. (ECF No. 180 at 9). As the Moving Defendants argue in reply, this would not be a proper reason for denying their motion.