IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| Kobe, Mark,<br><br>    Plaintiffs,<br><br>vs.<br><br>Henry McMaster, in his capacity as<br>Governor[1] of the State of South Carolina,<br>et al.,<br><br>    Defendants. | C/A No. 3:11-1146-MBS<br><br>**ORDER AND OPINION** |

FACTS AND PROCEDURAL HISTORY

  This case has an extensive history. Briefly, Plaintiffs Kobe, Mark, and John[2] filed a complaint on May 11, 2011, and an amended complaint on October 18, 2011. Plaintiffs alleged the following causes of action: Violation of the Americans With Disabilities Act (Count One); Violation of Section 504 of the Rehabilitation Act (Count Two); Violation of 42 U.S.C. § 1983 (Count Three); Violation of 42 U.S.C. §§ 1983 and 1988 (violation of civil rights) (Count Four); Violation of 42 U.S.C. § 1985(3) (conspiracy) (Count Five); Violation of the Supremacy Clause (Count Six); and Violation of RICO (Count Seven).[3]

---

  [1] Governor McMaster was substituted for former Governor Nikki Haley pursuant to Fed. R. Civ. P. 25(d) on July 25, 2017.

  [2] Plaintiff John was dismissed as a party on July 23, 2013. The court erroneously stated in its order filed September 30, 2014, that Plaintiff Mark was dismissed as a party on July 23, 2013. ECF No. 296.

  [3] Plaintiff Kobe also asserted state law claims against the Babcock Center, a private entity that provides services to persons with disabilities, as follows: Injuries to Kobe Caused by Babcock Center, Judy Johnson and/or Agents and Employees of The Babcock Center Resulting

Of relevance here, the matter came before the court on motions for summary judgment filed by Defendants on January 6, 2014. Plaintiff also filed a motion for summary judgment on January 6, 2014, which was amended on January 22, 2014. Plaintiff contended that the court should resolve the following issues:

(1) Have the Defendants violated the reasonable standards provision of 42 U.S.C. § 1396a(a)(17) of the Medicaid Act and the South Carolina Administrative Procedures Act by failing to establish and utilize reasonable, ascertainable, non-arbitrary standards and procedures to determine eligibility for and the extent of medical assistance provided to Plaintiffs?

(2) Have the Defendants violated the "reasonable promptness" requirement of the Medicaid Act by failing to provide Kobe with the wheelchair and speech device his physician ordered and by failing to provide residential services in the least restrictive setting within ninety days of those needs being identified?

(3) Have the Defendants violated the integration mandate of the Americans with Disabilities Act by failing to provide Kobe with a wheelchair, a speech device, speech therapy services and placement in a supervised apartment with necessary support services?

ECF No. 25, 3.[4]

The court issued an order and opinion on September 30, 2014, concluding that Plaintiffs' claims should be dismissed either as moot, not ripe, or because Plaintiffs lacked standing. ECF No. 296. Accordingly, the court granted Defendants' motions for summary judgment. Plaintiffs timely filed a notice of appeal. On December 15, 2016, the Court of Appeals for Fourth Circuit affirmed in part, vacated in part, and remanded the action. ECF No. 368. First, the Fourth Circuit affirmed

---

From Neglect, Deliberate Indifference, Assault and Battery and Intentional Infliction of Emotional Distress (Count Eight). Count Eight was dismissed with prejudice on March 20, 2015.

[4] Plaintiff also asserted an issue regarding Kobe's compensable injuries. As noted above, this matter was resolved prior to trial.

the court's rulings as to Mark on ripeness grounds. Id. at 33, n.21. Next, the Fourth Circuit affirmed the court's determination that the eligibility to receive ADHC services is moot based on the consent orders entered with these Plaintiffs. Id. at 37.

The Fourth Circuit determined, however, that there was a "pattern of allegedly unreasonable delays and improper denials" with respect to Kobe's wheelchair and ACD entitlement. The Fourth Circuit found that Defendants "have not met their 'heavy burden' of showing that after this litigation has concluded, Kobe will not once again find himself without the equipment he needs and without any ability to obtain it without significant delay." Id. at 39. Therefore, the Fourth Circuit vacated the court's order on justiciability grounds, and remanded for further proceedings. Id. In addition, the Fourth Circuit vacated the grant of summary judgment in favor of Defendants on Counts One through Seven and remanded for further consideration of the viability of Plaintiffs' claims against each Defendant. Id. at 40.[5]

The matter again came before the court on Defendants' motions for summary judgment on remand, as well as on cross-motion for summary judgment filed by Plaintiffs. On March 30, 2018, the court issued an order granting Defendants' motions and denying Plaintiffs' cross-motion. Mark's claims having been found moot by the Fourth Circuit, the court addressed only Kobe's claims.[6] The court found, in relevant part, as follows:

---

[5] The Fourth Circuit also remanded an order dismissing Defendant Nikki Haley, in her capacity as Governor of South Carolina (currently, Henry McMaster, in his capacity as Governor) on the basis of Eleventh Amendment immunity. That dispute was resolved and a stipulation of dismissal filed on July 2, 2018. ECF No. 501.

[6] Mark was terminated as a Plaintiff on September 30, 2014.

A. <u>Amended Motion for Summary Judgment on Remand filed by Defendants Buscemi, Laurent, Butkus, Huntress, Lacy, Waring, and Chorey (the "DDSN Defendants")</u>

The DDSN Defendants observe that, as to them, Plaintiff has shown no need for prospective injunctive relief and has abandoned any damages claims, such that these Defendants are entitled to dismissal of the case against them in its entirety. As to the merits of Plaintiff's allegations, the DDSN Defendants assert that Counts 1 (ADA) and 2 (Rehabilitation Act) essentially present the same contention that Plaintiff was wrongfully denied ADHC services. As noted hereinabove, the Fourth Circuit has determined this particular contention is moot because Plaintiff did not lose ADHC services and, further, were successful on administrative appeal.

The DDSN Defendants assert that any non-ADA or non-Rehabilitation Act claims against these Defendants in their official capacities are barred by the Eleventh Amendment. See <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989)). As to Plaintiff's § 1983 claims against the DDSN Defendants in their individual capacities (Counts 3, 4), these Defendants argue that Plaintiff failed to show any specific factual allegations of wrongdoing attributable to any of the named DDSN Defendants. Regarding Plaintiff's claim that he was denied a wheelchair and ACD, the DDSN Defendants assert these claims are directed to the DHHS Defendants, Keck and Fortner. Regarding Count 5, the DDSN Defendants asserts that Plaintiff's claims relate to a conspiracy to deny him ADHC services, and because such services were not denied, "obviously there could not have been a conspiracy to effect such denial." ECF No. 399-1, 11.

Regarding Count 6, the DDSN Defendants note the dearth of factual allegations in the amended complaint under this cause of action, which simply states:

> 376. Defendants have violated the following provisions of the Medicaid Act, in violation of the Supremacy Clause of the United States Constitution: reasonable promptness (42 U.S.C. § 1396(a)(8)); free choice (42 U.S.C. § 1396(a)(23)); comparability (42 U.S.C. § 1396(a)(10)); reasonable standards (42 U.S.C. § 1396a(a)(17)) and equal access (42 U.S.C. § 1396a(a)(30)) provisions of the Social Security Act.

ECF No. 65, 64.

The DDSN Defendants assert Plaintiff has set forth no facts showing harm to Plaintiff or specific acts by these Defendants that resulted in violations of enumerated sections of the Medicaid Act and Social Security Act.

4

Finally, regarding Count 7, the DDSN Defendants contend that Plaintiff has failed to allege (1) one of the "predicate acts" set forth in 18 U.S.C. § 1961(1); (2) how, if at all, the purported activities of the criminal enterprise affected interstate or foreign commerce; or (3) any evidence Plaintiff suffered a business or property loss.

In his response in opposition, Plaintiff offers a lengthy recitation of factual allegations and appears to address only the following causes of action as to DDSN: Count 5 (conspiracy to interfere with civil rights); Count 6 (Supremacy Clause), and Count 7 (RICO). Plaintiff does not dispute the DDSN Defendants' arguments regarding Counts 1, 2, 3, and 4. The court concludes Plaintiff has abandoned these causes of action as to these Defendants.

Turning to Count 5 (conspiracy to deny civil rights), Plaintiff asserts the following in his response in opposition to the DDSN Defendants' motion for summary judgment:

> Plaintiffs have alleged that they have been deprived of services and needed equipment and due process, liberty and equal protection rights. Kobe has demonstrated that he has suffered discrimination and [been] injured thereby as a consequence of overt acts committed by the named Defendants in connection with the conspiracy.

ECF No. 436, 34.

Plaintiff's argument is based on his contention that DHHS, DDSN, and other agencies have engaged in wide-spread corruption, negligence, and criminal conduct over the past decade or more. In the court's view, Plaintiff's allegations fail to demonstrate any of the DDSN Defendants' purported mismanagement and falsification of information, if such conduct were to be proven, was motivated by a specific class-based, invidiously discriminatory animus to deprive Plaintiff of his rights. In point of fact, Plaintiff alleges that the "conspiratorial purpose was financial."

Regarding Count 6 (Supremacy Clause), Plaintiff states that the "future deterrence of violations is critically important in this case, because Plaintiffs have life long disabilities and their needs will increase as they age. Waiver participants simply cannot afford years of litigation each time they require a wheelchair, a speech device or other medically necessary services." ECF No. 436, 31-32. The Supremacy Clause is not the source of any federal rights, and does not create a cause of action. <u>Armstrong v. Exceptional Child Center, Inc.</u>, 135 S. Ct. 1378, 1383 (2015). It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so. <u>Id.</u> Moreover, there is no suggestion in the record by any party of a clash between

state and federal law. The gravamen of Plaintiff's complaint is that Defendants have, in varying respects, failed to comply with the mandates set forth in the ADA, Rehabilitation Act, and Medicaid.

Finally, regarding Count 7 (RICO), Plaintiff asserts that he has provided "extensive documentation of conduct of an enterprise (the diversion of funds to DDSN work activity centers) through a pattern of racketeering activity." ECF No. 436, 35. Plaintiff asserts predicate acts to include "obtaining insurance through false pretenses, including money laundering, mail and wire fraud and intimidation of witnesses." Id. While it is true that Plaintiff has made allegations of corruption, his claims are speculative in nature. The court discerns no facts tending to show an enterprise distinct from the persons alleged to have violated 18 U.S.C. § 1962 (c). See Palmetto State Med. Ctr. v. Operation Lifeline, 111 F.3d 142, 148 (4th Cir. 1997). Nor has Plaintiff proved that each DDSN Defendant engaged in at least two acts of racketeering activity within a ten-year period, as required by 18 U.S.C. § 1961(5). For all these reasons, the DDSN's motion for summary judgment is **granted**.

. . . .

C. <u>Motion to Dismiss and for Summary Judgment filed by Defendant Leitner</u>

Defendant Leitner asserts that she is entitled to summary judgment as to Plaintiff's claim against under Count 3 (42 U.S.C. § 1983), the only count in which she is named. See ECF No. 65, ¶ 311. Defendant Leitner notes that the only factual allegations in the amended complaint alleges that on January 5, 2011, she, as Director of the Richland Lexington Disabilities Board, sent a letter to Plaintiff alerting him that a review of ADHC services was forthcoming. Defendant Leitner states that, as discussed above, Plaintiff was never denied ADHC services, and there are no other factual allegations of wrongdoing with respect to her that she violated Plaintiff's constitutional rights. Defendant Leitner also argues that she was not involved in the DHHS denials of Plaintiff's applications for an ACD. According to Defendant Leitner, it was through the Richland Lexington Disabilities Board that an ACD was borrowed for Plaintiff through the University of South Carolina Assistive Technology Program in 2013, and also through the Richland Lexington Disabilities Board that Plaintiff's case manager recently procured an ACD for Plaintiff's permanent use through the South Carolina Vocational Rehabilitation Department. Defendant Leitner contends there is no genuine issue of material fact but that she did not deprive Plaintiff of his constitutional or statutory rights.

In response, Plaintiff asserts, without competent evidence, that Defendant Leitner: (1) has failed to explain why Plaintiff's requests to move to a less restrictive environment were not transmitted to DDSN; (2) "made a conscious decision to inform Judy Johnson that [Plaintiff] intended to move from the Babcock Center,

when she was asked not to share that information until the placement had been arranged. Then, she colluded with Johnson in an attempt to enlist [Plaintiff's] mother to prevent him from moving from a group home where he had been abused and neglected"; (3) failed to timely provide Plaintiff with written notices containing all of the information required by 42 C.F.R. § 431.210, likely because of "collusion with DDSN and DHHS Defendants to attempt to moot [Plaintiff's] lawsuit (by obtaining a 'loaner' device)." ECF No. 435-36. Plaintiff's "unsubstantiated allegations and bald assertions" are not adequate to defeat summary judgment. See Evans v. Tech. Application & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996).

Defendant Leitner's motion for summary judgment is **granted**.

D.  Motion for Summary Judgment filed by Defendants Keck and Forkner (the "DHHS Defendants")

Plaintiff alleges that the DHHS Defendants failed to provide Plaintiff with an ACD and wheelchair. Plaintiff's allegations arise under the ADA and the Rehabilitation Act (Counts 1, 2), 42 U.S.C. § 1983 (Counts 3, 4), conspiracy (Count 5), and RICO (Count 6).

The DHHS Defendants first contend that Plaintiff cannot show he was excluded from possessing an ACD on the basis of his disability. These Defendants contend that Plaintiff's request was reviewed and it was determined that an ACD with pre-recorded messages, as opposed to the requested ACD that synthesized speech, would provide him with adequate speech support. According to the DHHS Defendants, Plaintiff chose to proceed in this court rather than the administrative appeal process regarding the DHHS Defendants' decision. The DHHS Defendants argue that the evidence shows only a difference of opinion as to the type of ACD that would be appropriate for his condition. The DHHS Defendants further contend this issue is moot because the ACD Plaintiff desired now has been approved and provided to him.

Regarding Plaintiff's wheelchair, the DHHS Defendants state that no request for a wheelchair was made to DHHS to be approved or denied. These Defendants inform the court, however, that Plaintiff submitted a request for a wheelchair on July 24, 2013, which was approved by DHHS on August 2, 2013. The wheelchair has been provided to Plaintiff. The DHHS Defendants assert that this issue also is moot.

As to Plaintiff's § 1983, § 1985, and RICO causes of action, the DHHS Defendants assert that the amended complaint is devoid of any factual allegations regarding actions or omissions by them aside from conclusory statements of wrongdoing, and, further, that any claims revolved around Plaintiff's contentions that Defendants attempted to deprive him of his right to participate in ADHC services.

7

These Defendants also assert that Plaintiff cannot maintain a cause of action under the Supremacy Clause.

Plaintiff's specific response in opposition to the DHHS Defendants' motion for summary judgment is that, if there were a difference of professional opinions regarding the type of ACD Plaintiff needed, DHHS should have sent a notice containing all information required by 42 C.F.R. § 431.201 to Plaintiff, and not just to the case manager and provider. Plaintiff fails to state how delivering a copy of any notice to him personally creates an issue of fact that should be submitted to a jury. The DHHS Defendants' motion for summary judgment is **granted** as to Counts 1 (ADA), 2 (Rehabilitation Act), and Counts 3 and 4 (§ 1983).

Plaintiff includes the DHHS Defendants in his argument regarding the DDSN Defendants regarding Counts 5 (conspiracy), Count 6 (Supremacy Clause), and Count 7 (RICO). For the reasons set forth hereinabove in Section A, the DHHS Defendants' motion for summary judgment is **granted** as to these claims.

The court is mindful that the Fourth Circuit found "pattern of allegedly unreasonable delays and improper denials" with respect to Plaintiff's wheelchair and ACD entitlement, and that the DHHS Defendants need to show "that after this litigation has concluded, [Plaintiff] will not once again find himself without the equipment he needs and without any ability to obtain it without significant delay." The DDHS Defendants represented to the court that an ACD acceptable to Plaintiff as well as a wheelchair have been provided to him on a permanent basis. Plaintiff contends that these Defendants continue to ignore the requirements of 42 U.S.C. § 1396a(a)(8) and have not provided him with services to be provided in a non-congregate setting; for speech services, including a swallow study, and for a bed that will allow him to raise the elevation of his head to prevent aspiration. According to the DDHS Defendants, these new claims lack factual basis in the record. Moreover, according to the DDHS Defendants, Plaintiff's request for a hospital bed was submitted for authorization on August 6, 2013, approved by these Defendants on August 12, 2013, and paid for by Medicaid on August 23, 2013. The court declines to consider Plaintiff's newly asserted allegations.

E.  Motion for summary judgment filed by Defendants Babcock Center and Judy Johnson (the "Babcock Defendants")

The Babcock Defendants first argue that Plaintiff cannot establish the Babcock Defendants violated the ADA (Count 1). The Babcock Defendants state that the only claims involving them revolve around participation in the ADHC program, which issue is moot. Regarding the Rehabilitation Act (Count 2), these Defendants contend that Plaintiff fails to assert any specific actions taken by Johnson, in her individual capacity as she is named, to support his claim that Johnson

8

personally discriminated against him based on his disability.

Regarding Plaintiff's § 1983 causes of action (Counts 3, 4), the Babcock Defendants assert that the Babcock Center is not a governmental entity acting under color of state law. In support of their assertion, these Defendants attach to their motion for summary judgment a copy of their business filing with the South Carolina Secretary of State. As to conspiracy to interfere with civil rights (Count 5), the Supremacy Clause (Count 6), and violations of RICO (Count 7), the Babcock Defendants make generally the same arguments as the DDSN Defendants and the DHHS Defendants.

In his response in opposition, Plaintiff relies on his recitation of mismanagement and investigation into the Babcock Center, and intimates that the Babcock Defendants possessed a financial incentive to limit expenditures for assistive technology and equipment. The court finds that Plaintiff's argument fails to establish discrimination on the basis of disability. Plaintiff also disputes Defendants' contention that the Babcock Center is not a governmental entity. Although there exist situations when a private organization may be treated as a public entity, see, e.g., Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001), Plaintiff does not engage in the analysis.

The DHHS Defendants' motion for summary judgment is **granted** as to Counts 1 (ADA), 2 (Rehabilitation Act), and Counts 3 and 4 (§ 1983).

Plaintiff includes the Babcock Defendants in his argument regarding the DDSN Defendants and DHHS Defendants regarding Counts 5 (conspiracy), Count 6 (Supremacy Clause), and Count 7 (RICO). For the reasons set forth hereinabove in Sections A and D, the Babcock Defendants' motion for summary judgment is **granted** as to these claims.

. . . .

F.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff asserts the following issues: (1) Defendants are in violation of the feasible alternatives, comparability and reasonable promptness requirements of the Medicaid Act which are enforceable under § 1983; (2) Defendants are in violation of the integration mandate of the Americans with Disabilities Act.

To the extent Plaintiff raises arguments in tandem with her responses in opposition to Defendants' various motions for summary judgment (excluding Defendant McMaster's motion to dismiss), his motion for partial summary judgment is **denied** for the reasons set forth hereinabove.

> To the extent Plaintiff raises new claims not asserted in the amended complaint, his motion for partial summary judgment is **denied without prejudice** to allow him raise his allegations in a new action.
>
> To the extent Plaintiff raises arguments barred by the mandate rule, his motion for partial summary judgment is **denied**.
>
> To the extent Plaintiff asserts damages claims against Defendants (excluding Defendant McMaster), his motion for partial summary judgment is **denied** for the reasons set forth in the Fourth Circuit's opinion.
>
> To the extent Plaintiff seeks injunctive relief for events occurring after the filing of the amended complaint, his motion for partial summary judgment is **denied without prejudice** to allow him to seek injunctive relief in a new action.
>
> Plaintiff does not dispute the DDSN Defendants' arguments regarding Counts 1, 2, 3, and 4. The court concludes Plaintiff has abandoned these causes of action as to these Defendants.

ECF No. 475.

This matter now is before the court on Plaintiff's motion for reconsideration, which motion was filed on April 27, 2018. See Fed. R. Civ. P. 59(e). The DDSN Defendants filed a memorandum in opposition on May 10, 2018; Defendant Leitner filed a response in opposition on May 11, 2018, the DDHS Defendants filed a response in opposition on May 11, 2018; and the Babcock Defendants filed a response in opposition on June 1, 2018.[7] Plaintiff filed an omnibus reply to Defendants' responses on June 15, 2018.

## DISCUSSION

Although Rule 59 addresses grounds for new trials, some courts have reasoned that the concept of a new trial under Rule 59 is broad enough to include a rehearing of any matter decided by the court without a jury. 11 Wright & Miller, Federal Practice & Procedure § 2804.

---

[7] The Governor filed a response on May 11, 2018; however, as noted above, the Governor is no longer a party to this action.

Notwithstanding the broad nature of Rule 59, motions for reconsideration are disfavored. They are not a matter of routine practice. Settino v. City of Chicago, 642 F. Supp. 755, 759 (N.D. Ill. 1986). Several courts have observed that they are neither expressly cognizable under the Federal Rules of Civil Procedure nor authorized by the local rules of the district court. See, e.g., Fisher v. Samuels, 691 F. Supp. 63, 74 (N.D. Ill. 1988).

Motions for reconsideration are inappropriate merely to introduce new legal theories or new evidence that could have been adduced during the pendency of the prior motion. Keene Corp. v. International Fidelity Ins. Co., 561 F. Supp. 656 (N.D. Ill.), aff'd, 736 F.2d 388 (7th Cir. 1982). The Fourth Circuit recognizes only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice. Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993). The Fourth Circuit has emphasized that counsel's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion. Id. (citing Atkins v. Marathon LeTourneau Co., 130 F.R.D. 625, 626 (S.D. Miss. 1990)).

A.  Private Attorneys General (ECF No. 493, 1)

Plaintiff contends that the court erred in failing to recognize that "Plaintiffs brought this action in their important role as private attorneys general, not only for themselves, but also for others whose important civil rights continue to be denied." ECF No. 83, 1. However, the Supreme Court has stated that "the Medicaid Act implicitly precludes private enforcement of [42 U.S.C. 1396a)], and [parties] cannot . . . circumvent Congress's exclusion of private enforcement." Armstrong v. Exceptional Child Center, Inc., 135 S.C. 1378, 1385 (2015) (citing Douglas v. Independent Living Center of Southern Cal., Inc., 132 S. Ct. 1204, 1212–13 (2012) (Roberts, C.J., dissenting)). The

Court noted that "the sole remedy Congress provided for a State's failure to comply with Medicaid's requirements—for the State's 'breach' of the Spending Clause contract—is the withholding of Medicaid funds by the Secretary of Health and Human Services." Id. (citing 42 U.S.C. § 1396c). The Court explained that the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Id. (citing Alexander v. Sandoval, 532 U.S. 275, 290 (2001)). Plaintiff's contention is without merit.

B.  Claims for Non-Congregate Placement and Compliance (ECF No. 493, 3)

Plaintiff states that the court erred in determining Plaintiff's requests for noncongregate placement and compliance with the ADA, the Rehabilitation Act, the Medicaid Act, and due process are "new." ECF No. 483, 3. Plaintiff states he has

> consistently complained that Defendants have violated the integration mandate of the ADA and the requirements of the Rehabilitation Act that require services to be provided in the least restrictive setting. [He] presented extensive evidence in the form of affidavits, opinions from other cases, and audits showing that Defendants have failed and continue to fail to comply with the reasonable promptness (1396a(a)(8), reasonable standards (1936a(a)(17) *[sic]*, feasible alternatives (42 U.S.C. § 1396n(c)(2)) and comparability (1396a(a)(10) mandates of the Medicaid Act.

Id.

Plaintiff contends that Defendants continually ignore the requirements of 42 C.F.R. § 431.200, et seq. Section 431.200 provides:

This subpart—

(a) Implements section 1902(a)(3) of the Act, which requires that a State plan provide an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly;

(b) Prescribes procedures for an opportunity for a hearing if the State agency or non-emergency transportation PAHP (as defined in § 438.9(a) of this chapter) takes

12

action, as stated in this subpart, to suspend, terminate, or reduce services, or of an adverse benefit determination by an MCO, PIHP or PAHP under subpart F of part 438 of this chapter; and

(c) Implements sections 1919(f)(3) and 1919(e)(7)(F) of the Act by providing an appeals process for any person who—

    (1) Is subject to a proposed transfer or discharge from a nursing facility; or

    (2) Is adversely affected by the pre-admission screening or the annual resident review that are required by section 1919(e)(7) of the Act.

(d) Implements section 1943(b)(3) of the Act and section 1413 of the Affordable Care Act to permit coordinated hearings and appeals among insurance affordability programs.

Plaintiff's arguments in this section seeks to challenge Defendants' alleged failure to comply with the Medicaid Act. Plaintiff's contentions are without merit for the reasons stated in the previous section.

C.    <u>Abandonment of Claims</u>  (ECF No. 483, 4)

Plaintiff denies abandoning claims for violation of the ADA and the Rehabilitation Act. Plaintiff contends that he has raised issues relating not only to the denial of service, but Defendants' failure to provide services in a setting less restrictive than a CTH II. ECF No. 483, 6. However, the Fourth Circuit observed that Plaintiff "offer[ed] no challenge to the district court's ruling that their claim that Kobe is entitled to be provided with an SLP is unripe. Nor do they challenge the ruling that [Kobe's] claim demanding payment for the speech pathologist who evaluated Kobe and provided him with speech services fell outside the scope of their complaint." <u>Kobe v. Haley</u>, 666 F. A'ppx 281, 285, n.21 (4th Cir. 2016). Plaintiff's arguments regarding denial of service and failure to provide services in a less restrictive setting are outside the scope of the Fourth Circuit's remand.

Plaintiff contends the court also "erred in failing to address Plaintiff's § 1983 claims for

13

violation of the reasonable promptness, reasonable standards, comparability and feasible alternative mandates[.]" ECF No. 483, 6. As the court previously noted, Plaintiff's § 1983 claims failed to show any specific factual allegations of wrongdoing attributable to any Defendant. In his motion to alter or amend, Plaintiff again argues, as he did on summary judgment prior to remand, that "Defendants reduced access to services based on blatantly false claims of 'budget reductions' and audits provided by Plaintiffs show that, while reducing services, DDSN and DHHS overbilled the federal government for insurance claims (Medicaid) by tens of millions of dollars," and that Defendants engaged in wire fraud, defrauded the government by filing false claims, and witness tampering. ECF No. 483, 7.

Regarding his conspiracy claim, Plaintiff realleges his assertion that Defendants conspired to "[keep] him in a setting that is more restrictive than his entire treatment team has recommended." Id. at 8. As noted hereinabove, any allegations by Plaintiff that he should be placed in a congregate setting are not ripe. With respect to Plaintiff's ADA cause of action, the court previously noted that Plaintiff cannot show disability discrimination. Plaintiff's own contention is that he cannot receive services requested because Defendants have surreptitiously diverted Medicaid funds without accountability. Plaintiff's contentions are without merit.

D.    Babcock Center  (ECF No. 483, 10)

Plaintiff asserts that the court erred in dismissing claims against the Babcock Defendants on the grounds that they did not act under color of state law. Plaintiff contends that the Babcock Defendants participated in a money laundering scheme and that Defendant Johnson joined with other Defendants to attempt to limit Plaintiff's access to assistive technology. However, as the court previously found, Plaintiff provided no analysis in his omnibus response to summary judgment with

respect to the factors set forth in Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001), and other authorities. Plaintiff's contention is without merit.

E.  Defendant Leitner  (ECF No. 483, 11)

Plaintiff asserts the court erred in ruling that Defendant Leitner was sued only under Count Three. As the court previously observed, the only factual allegation against Defendant Leitner is that on January 5, 2011, she, as Director of the Richland Lexington Disabilities Board, sent a letter to Plaintiff alerting him that a review of ADHC services was forthcoming. As in his motion for summary judgment, Plaintiff contends Leitner cooperated with other Defendants to limit services and force Plaintiff into remaining in an unsafe institution.

The court previously held that Plaintiff's unsubstantiated allegations and bald assertions are not adequate to defeat summary judgment. Plaintiff's contention is without merit.

F.  RICO Claims  (ECF No. 483, 11)

Plaintiff contends the court erred in failing to address his evidence that he contends "demonstrated patterns of money laundering, diversion of insurance proceeds, intimidation of witnesses and other violations described in Count Seven." ECF No. 483, 12. Plaintiff points the court to no competent evidence in support of his RICO claims. Plaintiff's contention is without merit.

## CONCLUSION

Plaintiff has failed to demonstrate an intervening change in controlling law, the existence of new evidence not available earlier, or the need to correct a clear error of law or prevent manifest injustice. Plaintiff merely expresses his disagreement with the court's ruling. Plaintiff's motion to

alter or amend (ECF No. 483) is **denied**.

       **IT IS SO ORDERED**.

                                        /s/ Margaret B. Seymour
                                        Senior United States District Judge

Columbia, South Carolina

December 19, 2018